# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT RATAZAK, | 1:06-CV-00907 OWW SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KEN CLARKE, Warden, et al., | |
| Respondents. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of San Bernardino, following his conviction by jury trial of first degree murder of an inmate in violation of Cal. Penal Code § 187. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1.  On October 31, 1980, Petitioner was sentenced to serve an indeterminate term of twenty-five years to life in state prison with the possibility of parole. Id. At the time of the murder, Petitioner was serving concurrent sentences for grand theft and second degree burglary in violation of Cal. Penal Code §§ 487(1)

and 459. See Answer, Exhibits 2 and 3. In addition, on December 8, 1978, Petitioner pled guilty to attempted escape by force. See Answer, Exhibit 4.

On July 5, 2005, a subsequent parole suitability hearing was held before the California Board of Prison Terms (now the Board of Parole Hearings - "BPH"). See Answer, Exhibit 6. Petitioner attended the hearing and was represented by his attorney, Richard Beshwate. Id. At the conclusion of the hearing, the BPH denied parole and deferred rehearing for five years. Id. at 64.

On October 20, 2005, Petitioner filed a petition for writ of habeas corpus in the San Bernardino County Superior Court challenging the BPH's decision. See Answer, Exhibit 7. On February 22, 2006, the petition was denied in a reasoned decision. Id. Petitioner then filed habeas petitions in the California Court of Appeals, Fourth Appellate District, and the California Supreme Court. See Answer, Exhibits 8 and 9. On March 17, 2007, the appellate court summarily denied the petition, and on June 14, 2006, the California Supreme Court denied the petition. Id.

Petitioner filed the instant petition for writ of habeas corpus in this Court on June 26, 2006. The petition for writ of habeas corpus challenges the 2005 decision of the BPH denying parole. Petitioner contends the decision finding him an unreasonable risk of danger to society was not supported by the evidence in violation of his due process rights. On January 18, 2007, Respondent filed an answer to the petition. Petitioner filed a traverse to Respondent's answer on March 28, 2007.

**FACTUAL BACKGROUND**

The Court hereby adopts the facts of the underlying offense as stated by the parole board and accepted as true by Petitioner at the 2005 hearing:

> On June 9, 1979 at approximately 1600 hours at the California Institution for Men Sycamore Hall Housing Unit a staff member observed an inmate later identified as Zachary, that's Z-A-C-H-A-R-Y, middle initial R, Hurst, H-U-R-S-T, lying in the hallway bleeding profusely from the mouth, nose and chest area. It was discovered that the victim had sustained multiple stab wounds. Hurst was transported to Corona Community Hospital where he died during emergency surgery. A search of the housing unit uncovered an inmate-manufactured stabbing instrument in a wash sink on the second tier. A search of all inmates and their cells led to the discovery of blood-stained clothing and shoes in the cell of [Petitioner] and his cellmate, Inmate Trejo, T-R-E-J-O. An examination of the subject revealed an abrasion and cuts on his arms. A subsequent investigation and witness interviews revealed he had had an altercation in the gym with

> the victim on June 5, 1979, which had been undetected by staff. On the day of the murder he approached the victim from behind while concealing a weapon in a sock. [Petitioner] then stabbed the victim repeatedly resulting in his death and was charged with the murder on August 16, 1979.

See Answer, Exhibit 6 at 13-15.

## DISCUSSION

I.    Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination

1  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
2  § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.
3        As a threshold matter, this Court must "first decide what constitutes 'clearly established
4  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
5  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this
6  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
7  of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
8  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
9  principles set forth by the Supreme Court at the time the state court renders its decision." Id.
10       Finally, this Court must consider whether the state court's decision was "contrary to, or
11 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at
12 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
13 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
14 Court on a question of law or if the state court decides a case differently than [the] Court has on a
15 set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.
16 at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the
17 state court identifies the correct governing legal principle from [the] Court's decisions but
18 unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at
19 413.
20       "[A] federal court may not issue the writ simply because the court concludes in its
21 independent judgment that the relevant state court decision applied clearly established federal
22 law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.
23 A federal habeas court making the "unreasonable application" inquiry should ask whether the
24 state court's application of clearly established federal law was "objectively unreasonable." Id. at
25 409.
26      Petitioner has the burden of establishing that the decision of the state court is contrary to
27 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
28 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

1    states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
2    state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
3    Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).
4           AEDPA requires that we give considerable deference to state court decisions. The state
5    court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's
6    interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,
7    537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).
8    II.    Review of Petition
9           A parole release determination is not subject to all the due process protections of an
10   adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see
11   also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural
12   protections that particular situations demand). "[S]ince the setting of a minimum term is not part
13   of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not
14   constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at
15   1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole
16   board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive
17   advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an
18   "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the
19   inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the
20   Board must be supported by "some evidence" having an indicia of reliability. Superintendent,
21   Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th
22   Cir.1987).
23          "In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not
24   comport with 'the minimum requirements of procedural due process,' unless the findings of the
25   prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454
26   (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128.  In
27   determining whether the "some evidence" standard is met, the Court need not examine the entire
28   record, independently assess the credibility of witnesses, or re-weigh the evidence. Id.  Rather,

the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the BPH is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case with regard to the procedural protections outlined in Greenholtz, as Petitioner concedes, he was provided all that is required. Petitioner was provided with advance notice of the hearing, representation by counsel at the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard during the hearing, and a written decision explaining the reasons why parole was denied. See Answer, Exhibit 6.

Petitioner, however, contends the BPH's decision had no evidentiary support. After reviewing all relevant evidence, the Court finds that the state court decisions rejecting Petitioner's claims were not unreasonable, because the BPH's decision is supported by "some evidence."

In denying parole in 2005, the BPH considered and found several factors indicating

1  unsuitability per § 2402(c).[1] First, the BPH relied on the facts of the commitment offense.
2  Pursuant to § 2402(c)(1)(B), the Board found the first degree murder was carried out in a
3  dispassionate and calculated manner. This finding is certainly supported by the evidence.
4  Petitioner approached his victim from behind and stabbed him 18 times with an inmate-
5  manufactured stabbing device which ultimately resulted in the victim's death. Clearly, this was
6  an execution-style murder. These facts fit well within the contours of § 2402(c)(1)(B).

   The Board further found the murder was committed in an exceptionally cruel and callous manner pursuant to § 2402(c)(1)(D).  This finding is also supported by some evidence. As stated above, Petitioner stabbed the victim 18 times. The wound that ultimately resulted in the victim's death had been delivered to his back. In light of these facts, there is some evidence to support the finding that the offense was carried out in a callous disregard for human suffering. 15 Cal. Code Regs. § 2402(c)(1)(D); <u>Biggs v. Terhune</u>, 334 F.3d 910, 916 (9th Cir.2003).

   The BPH also found the motive for the killing was trivial. The record shows the motivation for this crime was a disagreement between the inmates over possession of the victim's watch. Clearly, the actions taken by Petitioner in this case, i.e., attacking the victim from behind by stabbing the victim 18 times, are vastly disproportionate to the trivial motive in this case.  Thus, the Board's finding that the motive was trivial is supported by some evidence. 15 Cal. Code Regs. § 2402(c)(1)(E).

   The Board further found pursuant to § 2402(c)(2)[2] that Petitioner had a long history of

---

[1] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
   (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
   (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
   (C) The victim was abused, defiled or mutilated during or after the offense.
   (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
   (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

[2] Pursuant to § 2402(c)(2), one factor indicating unsuitability is if "[t]he prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age."

violence. Certainly, this factor is supported by the evidence. Petitioner had been previously charged with several offenses ranging from petty theft to burglary. In 1978 while Petitioner was serving time on grand theft and burglary convictions, he committed a violent escape attempt. In perpetrating this crime, Petitioner attacked a cadet staff member at the institution, grabbed him by the throat, beat the victim's head against a wall, placed a strip of blanket around his throat, and choked him to the point of unconsciousness.

The BPH also found that Petitioner had engaged in serious misconduct in prison pursuant to § 2402(c)(6). Aside from the attempted escape, Petitioner had also sustained six CDC 128A counseling chronos during his incarceration with the last one being in 2003. He further sustained ten CDC 115 disciplinary reports, and the last two were committed after his most recent parole hearing. In February of 2004, Petitioner refused to submit to a urinalysis examination. In August of 2004, he harassed his cellmate by asking for the inmate's commitment papers. Again, the BPH finding is supported by at least some evidence.

The BPH noted Petitioner suffered from a long history of substance abuse as well. Petitioner admitted he was still a heroin addict. See Answer, Exhibit 6 at 21, 41. Prior to his incarceration he had been committed as an addict. In addition, after he had completed his commitment and become clean, on the second day after he was released he used heroin again. Id. at 23.

The Board further determined Petitioner had not programmed sufficiently despite admitting he was still a heroin addict. Notwithstanding his long term of incarceration, he only received seven years of self-help for his addictions. He has refused to seek out self-help in the past year and a half even though the Board on previous occasions stressed his need to acquire additional programming in this area. His answer to the Board's concerns was simply that he decided he no longer needed it. The fact that Petitioner had recently refused to submit to a urinalysis test is highly supportive of the Board's concerns. Thus, the Board's finding is well-supported by the record.

As positive factors demonstrating suitability pursuant to § 2402(d), the Board found Petitioner has performed work at the institution admirably, has acquired good vocational skills

and has good parole plans. Nevertheless, the negative factors far outweighed the positive factors.

Petitioner argues the Board relies on the unchanging circumstances of the underlying offense. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, ___ F.3d ___, 2007 WL 2027359 *5 (9th Cir. 2007), *citing* Biggs, 334 F.3d at 916. As discussed above, however, the circumstances of the offense, while significant, were not the only reasons for the Board's decision. The Board found Petitioner's history of violence, negative institutional behavior, history of substance abuse, and lack of sufficient self-help programming to be highly relevant in concluding Petitioner would pose an unreasonable danger to public safety should he be presently released. The concerns raised in Biggs are not present in this case, because the Board is not continually relying solely on the commitment offense.

It is apparent the Board considered all relevant evidence in this case and carefully balanced and assessed the various factors. Those findings were supported by at least "some evidence." It cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

### RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and
2. Judgment be entered in favor of Respondent.

     This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 14, 2007**            /s/ Sandra M. Snyder
                                                      UNITED STATES MAGISTRATE JUDGE